188 F.3d 163 (3rd Cir. 1999)
 ANTHONY SEBOROWSKI; GILBERT IVERS; MARION BELLAY, on behalf of themselves and all others similarly situated, Appellants
v.
PITTSBURGH PRESS COMPANY, a Pennsylvania corporation; PG PUBLISHING COMPANY, a Pennsylvania corporation; SCRIPPS HOWARD INC, an Ohio corporation; PITTSBURGH TYPOGRAPHICAL UNION NO. 7; JAMES C. LOWEN; JAMES F. O'BRIEN; RAYMOND J. MILLER; RAYMOND N. BARNETT; BILL D. FREEMAN, individuals
 No. 98-3631
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued: May 6, 1999
Decided August 10, 1999
 
 On Appeal from the United States District Court for the Western District of Pennsylvania (D.C. No. 96-cv-01117) District Judge: Hon. Donetta W. Ambrose [Copyrighted Material Omitted]
 Samuel F. Reynolds, Jr. (Argued), WEISMAN, GOLDMAN, BOWEN & GROSS, 310 Grant Street, Grant Building, Suite 420, Pittsburgh, PA 15219
 Tybe A. Brett, 835 Chalmers Place, Pittsburgh, PA 15243
 Thomas W. Henderson, 3975 Oxford Centre, Pittsburgh, PA 15219, ATTORNEYS FOR APPELLANTS
 Wayne C. Dabb, Jr., BAKER & HOSTETLER, 1900 East 9th Street, National City Center, Suite 3200, Cleveland, OH 44114
 John A. McCreary, Jr. (Argued), VOLK, ROBERTSON & HELLERSTEDT, Three Gateway Center, 15th Floor East, Pittsburgh, PA 15222, ATTORNEYS FOR APPELLEES Pittsburgh Press, Scripps Howard, Inc, Raymond J. Miller and Bill D. Freeman
 Debra H. Dermody (Argued), REED, SMITH, SHAW & McCLAY, 435 Sixth Avenue, Pittsburgh, PA 15219-1886, ATTORNEY FOR APPELLEES Pittsburgh Publishing Company, James C. Lowen, James F. O'Brien and Raymond N. Barnett
 Marianne Oliver (Argued), 808 Grant Building, Pittsburgh, PA 15219, ATTORNEY FOR APPELLEE Pittsburgh Typographical Union No. 7
 Before: NYGAARD, ALDISERT and STAPLETON Circuit Judges
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 Members, former members and beneficiaries of deceased former members of Pittsburgh Typographical Union No. 7 (the "Union") appeal from the judgment in favor of Appellees --the Union, Pittsburgh Press Company (the "Press"), PG Publishing Company, Scripps Howard, Inc., James C. Lowen, James F. O'Brien, Raymond J. Miller, Raymond N. Barnett and Bill D. Freeman--on their breach of collective bargaining agreement and breach of fiduciary duty claims. This appeal requires us to decide if the district court erred when it granted preclusive effect to an arbitrator's interpretation of a collective bargaining agreement. We conclude that the district court properly ordered arbitration and properly applied the doctrine of issue preclusion and will affirm.
 
 I.
 
 2
 In 1986, the Press was struggling for survival in the Pittsburgh daily newspaper market. Critical to labor negotiations at that time was the Press's desire to reduce the union membership workforce. In order to effectuate a reduction in the number of employees working in the Composing Room of the Press, the Press and the Union entered into the Bonus Incentive Compensation Plan Agreement ("BICPA") on November 20, 1986, which by its express language "shall be attached to and supplement the Collective Bargaining Agreement (CBA) now or hereinafter in effect between the parties." App. at 50. The BICPA accomplished the necessary reduction by obligating the Press to make certain payments to those employees who voluntarily severed their employment ("Goers") and to make contributions to a defined contribution plan (the "Plan and Trust") created for the benefit of those employees who remained ("Stayers").
 
 
 3
 To effectuate this, P 5 of the BICPA provided: The Employer and Union agree to establish a defined contribution plan ("Plan") and related trust fund ("Trust") which shall be administered by a Joint Board Of Trustees ("Trustees"), with two (2) appointed by the Employer and two (2) appointed by the Union. The Employer's contribution, as defined above, shall be paid to the Trust within thirty (30) days after an employee is separated.
 
 
 4
 App. at 53-54.
 
 
 5
 On December 31, 1986 the Press and the Union implemented P 5 of the BICPA by entering into an agreement entitled "Individual Account Plan," the preamble of which reads as follows:
 
 
 6
 WHEREAS, pursuant to a collective bargaining agreement between the Company and the Union, a defined contribution plan is to be established for the benefit of certain of the Company's employees who are represented by the Union;
 
 
 7
 NOW, THEREFORE, the following defined contribution plan is hereby established by the Company and the Union, effective November 1, 1986.
 
 
 8
 App. at 171.
 
 
 9
 The gravamen of the dispute in this case are the particulars governing the contributions to the Plan and Trust. Here, as often is the case, "the devil is in the details."
 
 The Individual Account Plan states:
 
 10
 The Company will contribute to the [Plan and Trust], out of its current and/or accumulated profits, such amounts as are specified by written agreement(s) between the Company and the Union.
 
 
 11
 App. at 175. The "written agreement" to which the Individual Account Plan refers is the BICPA. Paragraphs 2A and 5 of the BICPA describes the method and amount of contributions:
 
 
 12
 2A. The Employer will set aside money to pay for these jobs by committing for payment for each job eliminated:
 
 
 13
 (1.) Two hundred sixty (260) straight time shifts pay at the day journeyman rate in effect at the time the job is eliminated.
 
 
 14
 (2.) A fixed sum of $54,501.
 
 
 15
 * * * *
 
 
 16
 5. [T]he payments described in section 3 for Job Eliminations will be deducted from the total job payment described in Section 2 and the remainder will be deposited in the Trust as described in this Section 5.
 
 
 17
 App. at 51, 53.
 
 
 18
 Appellants brought suit for breach of fiduciary duty under ERISA and for breach of the collective bargaining agreement under the LMRA. In their LMRA claims, they alleged that the Press, PG Publishing, as a successor, and the Union did not adhere to their contractual obligations because the Press improperly deducted FICA liability on payments to the Goers from the amount it deposited into the Plan and Trust for the Stayers. They contend that there is no specific language in the BICPA to permit the deduction. Notwithstanding Appellants' contentions, it is not controverted that the signatories to these agreements-- the Press and the Union--interpreted the Plan and Trust from the very beginning to authorize the Press to deduct the liability. Thus, the dispute before us is not between the negotiators and/or the signatories of the agreements, but it is a claim by individuals against both the employer and the Union.
 
 
 19
 In their ERISA claims, Appellants alleged that the Plan and Trust fiduciaries failed to ensure that the Press made all contributions required by the BICPA to the Plan and Trust. Because the BICPA contained an arbitration clause, the district court ordered the parties to arbitrate the claim for breach of the collective bargaining agreement and stayed further proceedings of the breach of fiduciary duty claims pending the conclusion of the arbitration.
 
 
 20
 Before the arbitrator, Appellants argued that "this case must be decided within the four corners of the BICPA and it is clear that the document does not provide for the deduction." App. at 238. The arbitrator considered and rejected Appellants' argument:
 
 
 21
 The basis of the complaint, as it relates to this case, is that the agreement was not being applied as written. It is this Arbitrator's experience that collective bargaining agreements often do not provide for every detail that was negotiated . . . The reason for the omission is not particularly important in this case but it does require the analysis to incorporate what has occurred over the years to discern the parties' intent.
 
 
 22
 App. at 240. Of critical importance to the arbitrator was the intent of the parties to the BICPA:
 
 
 23
 [The parties] agreed that the Press could deduct its FICA liability before depositing the remainder in the Trust. While the parties may not have expressly made this point in the terms of the BICPA, it is clear that it is how they administered the Plan from the beginning and that administration passed the scrutiny of annual audits as well as inquiry from the Internal Revenue Service. The parties knew and understood the bargain that was struck and consistently administered the BICPA in accordance with that understanding.
 
 
 24
 App. at 239 (emphasis added). The arbitrator concluded that there was no breach of the collective bargaining agreement because it had been interpreted by the Union and the Press to allow for deduction of FICA liability. In reaching his conclusion, the arbitrator received testimony from the Union and the Press drafters of the instrument who still contend that the FICA deduction is permissible.
 
 
 25
 Subsequently, Appellees moved to confirm the arbitration award and to dismiss the complaint. By Opinion and Order dated November 12, 1998, the district court confirmed the award, granted preclusive effect to the arbitrator's decision and dismissed the breach of fiduciary duty claims. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291 and exercise plenary review of the district court's dismissal of the complaint. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).
 
 II.
 
 26
 Appellants' claims for breach of the collective bargaining agreement are based on their interpretation of the BICPA. They contend that the Press breached the collective bargaining agreement by contributing to the Plan and Trust an amount different from and less than that amount specified by the language of the BICPA. Specifically, they complain that the Press was not entitled to deduct its FICA liability for the Goers from its contributions to the Plan and Trust for the Stayers.
 
 
 27
 The district court dismissed the claims for breach of the collective bargaining agreement and ordered arbitration pursuant to the terms of the BICPA, which provides:
 
 
 28
 In the event any differences arise as to the interpretation or operation of this BICPA both parties will try to settle it by negotiation promptly. Any differences not resolved in this manner shall be submitted to arbitration as per Section 60 "Joint Standing Committee" of the [collective bargaining agreement].
 
 
 29
 App. at 57.
 
 
 30
 It has long been an established precept of federal labor law that the method of dispute resolution agreed to by the parties in their labor agreement takes primacy over civil actions for breach of contract. See, e.g., Vaca v. Sipes, 386 U.S. 171, 184 (1967); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-568 (1960). This principle is undiminished when the dispute concerns the funding of an employee benefit plan maintained pursuant to a collective bargaining agreement. See, e.g., Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276, 279-280 (3d Cir. 1984) ("[T]he presumption in favor of arbitrability continues in full force, even though the controversy affects an employee benefit plan."). Thus, the district court did not err by ordering the parties to arbitrate the claims alleging breach of the collective bargaining agreement.
 
 
 31
 Appellants contend that the district court erred because they "are not parties to the [BICPA] and collective bargaining agreement" and because "[t]hese agreements do not authorize or require the [Appellants] to arbitrate any dispute." Appellants' Br. at 18. Appellants are current and former employees and beneficiaries of deceased employees who were part of the bargaining unit covered by the BICPA and the collective bargaining agreement negotiated by the Union, the unit's exclusive bargaining representative. It is clearly established that all terms of a collective bargaining agreement, like the BICPA, are binding on the individual employees represented by the union. Michota v. Anheuser- Busch, Inc. (Budweiser), 755 F.2d 330, 335 (3d Cir. 1985). Thus, Appellants' protestations that they are not parties to the BICPA and that they are not bound by the BICPA arbitration provision are arguments that run counter to ruling case law. Appellants seek to have the benefits of collective bargaining without assuming responsibilities of the process.
 
 
 32
 Appellants' more serious argument is that they cannot be compelled to arbitrate the breach of collective bargaining agreement claim because they could not have initiated the arbitration in the first place. In general, "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as a mode of redress." Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965); see also Vaca, 386 U.S. at 184 ("Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."). Appellants did not attempt to initiate arbitration.
 
 
 33
 There is an exception by which an employee may circumvent the established grievance procedures in a collective bargaining agreement and proceed directly to civil litigation: when the union breaches its duty to represent fairly employees in the handling of contractual disputes. Vaca, 386 U.S. at 186-188. That exception does not apply here because Appellants have not contended that the Union wrongfully refused to pursue their cause. Indeed, they never even attempted to present their cause to the Union.
 
 
 34
 Appellants may have considered that an attempt to persuade the Union to pursue arbitration with the Press and PG Publishing would be fruitless on the basis of a 1991 incident, in which the exact issue involved here was presented in a grievance by an employee of the Press. The Union, however, decided not to pursue the grievance because the employee's position "did not conform to the parties' understanding regarding what was negotiated." App. at 243.
 
 
 35
 Appellants cannot use this incident as support for their contention that presentation of their cause to the Union would have been futile to initiate arbitration. The Union's refusal to arbitrate does not constitute, as a matter of law, an inability by its members to initiate arbitration under the collective bargaining agreement. A union is not required to press every contractual dispute to arbitration, especially a dispute that the union has in good faith determined lacks merit. Vaca, 386 U.S. at 191-192; Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970). Thus, Appellants' argument that they cannot be compelled to arbitrate because they were unable to initiate arbitration fails.
 
 III.
 
 36
 Appellants argue also that the district court erred by improperly granting preclusive effect to the arbitrator's decision and, accordingly, erred by dismissing their fiduciary duty claims. They contend that the district court should not have granted preclusive effect to the arbitrator's decision because the arbitrator relied on an oral understanding between the Press and the Union instead of interpreting the precise written language of the BICPA.
 
 
 37
 Collateral estoppel, also known as issue preclusion, prevents relitigation of a particular fact or legal issue that was litigated in an earlier action. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). In order for the doctrine to apply, (1) the issue decided in the prior adjudication must be identical to the one presented in the later action, (2) there must be a final judgment on the merits and (3) the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication and have had a full and fair opportunity to litigate the issue in question in the prior action. Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 548 (3d Cir. 1996). Appellants protest the application of the doctrine of issue preclusion here because they contend that the issue decided in the arbitration is different than the issue to be decided in the fiduciary duty claims and that they did not have a full and fair opportunity to litigate the issue before the arbitrator. We disagree.
 
 A.
 
 38
 An employer and union here agreed to supplement their collective bargaining agreement. In the supplement, the BICPA, the employer committed itself to establish a benefit plan. It thereafter executed a document, the Individual Account Plan, establishing what all agree to be an ERISA plan. It necessarily follows that the trustees of the plan owed a fiduciary duty to the plaintiffs to administer this plan in accordance with its written terms. 29 U.S.C.S 1104. Plaintiffs' only claim is that the trustees breached this duty by failing to collect from the employer the amounts owed to the plan under its terms.
 
 
 39
 The Individual Account Plan states that the company will contribute "such amounts as are specified [from time to time] in written agreement(s) between the Company and the Union." The plan thus incorporates by reference the provisions of the BICPA which determine the amount to be contributed. We have concluded from the documents and the context that the Individual Account Plan thereby incorporated not only the text of Paragraphs 2A and 5 of the BICPA but also the stipulation that, in the event of a dispute, an arbitrator's interpretation of that text will govern. Accordingly, our analysis for purposes of ERISA should be no different from the analysis that would be appropriate had the Individual Account Plan itself set forth in haec verba the text of Paragraphs 2A and 5 and a stipulation that, in the event of a dispute, an arbitrator's interpretation of that text would govern. We perceive nothing in ERISA that would stand in the way of a court's enforcing such a plan as written and, accordingly, we discern nothing inappropriate in the District Court's giving the arbitrator's interpretation issue preclusive effect in these proceedings under 29 U.S.C. S 1104.
 
 
 40
 Although it is true, as plaintiffs emphasize, that their claim is created by 29 U.S.C. S 1104, it is essentially a contract-based claim because the defendants may be liable only if the plaintiffs establish that they failed to enforce a right conferred under the terms of the plan. Here, as in Delgrosso v. Spang and Co., 769 F.2d 928, 932 (3d Cir. 1985), "while [Appellants] assert[ ] . . . a breach of ERISA's statutory fiduciary duties by [Appellees], the essence of the alleged breach of fiduciary duty is a failure to abide by the terms of the [ERISA plan]. [Appellees'] compliance with ERISA thus depends upon a construction of the [plan]."
 
 
 41
 Insofar as ERISA was concerned, the employer and the union were entitled to specify whatever contribution they determined.[1] Accordingly, the crucial issue here is what the employer intended when it established the plan and, in doing so, incorporated by reference the BICPA provisions specifying the amount of its contributions. Arbitration of this kind of issue is not inconsistent with ERISA. We long ago concluded "that contractually based pension claims . . . remain subject to arbitral resolution [under ERISA], just as contractually based claims for breach of a collective bargaining agreement have been held to be subject to arbitral resolution." Barrowclough v. Kidder Peabody & Co., Inc., 752 F.2d 923, 939 (3d Cir. 1985) (overruled in part by Pritzker v. Merrill Lynch, 7 F.3d 1110 (3d Cir. 1993)).
 
 
 42
 Indeed, in a case closely analogous to that before us, we previously held that arbitration should go forward before resolution of the plaintiff's claims under ERISA for breach of fiduciary duty where the employer's duty to make contributions under the plan was dependent on the interpretation of a collective bargaining agreement. Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276 (3d Cir. 1984). At issue there was whether the employer had breached its fiduciary duty under ERISA by refusing to make premium contributions to a health care plan during the course of a strike. We remanded with the following instructions:
 
 
 43
 On remand the district court should stay the ERISA claims pending the results of the grievance procedures. If arbitration establishes that no obligation to continue premium payments existed on the termination of the labor agreement, the district court shall dismiss the complaint with prejudice.
 
 
 44
 If, however, it is determined that the employer had a continuing duty to provide coverage, the district court shall then consider the merits of the ERISA claim.
 
 
 45
 Viggiano, 750 F.2d at 281 (citations omitted).
 
 
 46
 As in Viggiano, the issue decided by the arbitrator here is one of the issues presented to the District Court in the fiduciary duty claims. In order to succeed on their beach of fiduciary claims, Appellants must prove that the trustees in bad faith failed to follow the terms of the plan. Burke v. Latrobe Steel Co., 775 F.2d 88 (3d Cir. 1985). An essential element of this showing is that the trustees in fact failed to follow the terms of the plan. If their conduct with respect to the collection of the employer contribution was in accordance with Sections 2A and 5 as interpreted by the arbitrator, it necessarily follows that Appellants cannot make the required showing.[2]
 
 
 47
 Appellants' argument that the issue decided by the arbitrator was not before the District Court is based on the assertions: (a) because ERISA requires a plan to be in writing, the District Court was constrained to determine the amount of the employer's contribution from the four corners of the documents; and (b) the arbitrator determined the employer's contribution from an oral agreement entered into the parties of the agreements. It is true, of course, that ERISA requires a plan to be in writing and renders oral agreements or modifications unenforceable. 29 U.S.C. S 1102(a)(1); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir. 1990). But it is not true that the effect of the District Court's holding was impermissibly to enforce an oral side agreement. The employer's plan here was in writing and incorporated by reference provisions of another written agreement. The employer was free to decide for itself what its contributions would be and clearly it intended those contributions to be in the amount specified in the text of Sections 2A and 5 as interpreted, in the event of a dispute, by an arbitrator. Nor can there be any dispute that a participant reading the written plan and the BICPA would understand that the employer's contribution level would be determined, in the event of a dispute, by an arbitrator applying "the law of the shop" to Sections 2A and 5. The fact that certain terms of a written ERISA plan are, by the plan's own terms, subject to subsequent interpretation by an arbitrator does not deprive the plan of its status as a "written instrument" within the meaning of 29 U.S.C. S 1102(a)(1). This conclusion necessarily follows from the teachings of Barrowclough, which enforce agreements to arbitrate contract-based ERISA claims.
 
 B.
 
 48
 Appellants argue also that the arbitrator's decision should not be accorded preclusive effect because the Union, whose position in the arbitration was "completely adverse" to Appellants' position, did not provide vigorous advocacy on Appellants' behalf. Appellants base this line of argument on the teachings of McDonald v. City of West Branch, 466 U.S. 284, 291 (1984). Presumably, they contend that the Union's antagonistic position precluded Appellants from having a full and fair opportunity to litigate the issue of funding before the arbitrator.
 
 
 49
 The facts of McDonald, however, are readily distinguishable from those here. There, the plaintiff was represented by the union before the arbitrator; thus, the union's lack of vigorous advocacy on the plaintiff's behalf prevented that plaintiff from having the opportunity to fully and fairly litigate his S 1983 claim. Here, by contrast, the Union did not appear on behalf of Appellants before the arbitrator. Rather, Appellants themselves appeared, represented by counsel, and the Union was an adversary. The Union's actions therefore cannot be held to have affected Appellants' ability to present their case before the arbitrator.
 
 
 50
 Moreover, it is clear that Appellants' arguments were presented to and considered by the arbitrator. The arbitrator clearly understood Appellants' position:
 
 
 51
 Complainants argue that this case must be decided within the four corners of the BICPA and it is clear that the document does not provide for the deduction. The parties were clear in providing for specific deductions in the document and there is no ambiguity which would provide a basis to allow evidence outside of its clear terms to describe an alleged agreement which would permit such a material amount of money to be diverted from the Stayers' fund. Parol evidence should not be allowed when the terms of the BICPA are clear and unambiguous. The matter should be resolved based on the clear terms of the BICPA and, therefore, resolved in favor of the Complainants.
 
 
 52
 App. at 238. Appellants' problem is not that they were denied the opportunity to fully and fairly litigate their claims. Rather, their claims were argued and subsequently rejected by the arbitrator, whose decision was supported by the evidence. It is clear that Appellants had a full and fair opportunity to litigate the issue before the arbitrator.
 
 
 53
 * * * *
 
 
 54
 Because the arbitrator concluded that the BICPA permitted the FICA deduction, Appellees did not violate their fiduciary duties and the district court did not err by dismissing Appellants' complaint on the basis of issue preclusion.
 
 
 55
 The judgment of the district court will be affirmed.
 
 
 
 NOTES:
 
 
 [1]
 This case is thus distinguishable from Struble v. N.J. Brewery Emp. Welfare Trust Fund, 732 F.2d 325 (3d Cir. 1984) in which there was no dispute as to the contribution required of the employer by the plan. When the plan developed a surplus, the defendant plan Trustees in that case, acting in their capacity as fiduciaries for the plan participants, voted to reduce the required contribution and to credit the employers with the surplus. In this case, the decision as to what the employer's contribution would be was not a decision made in a fiduciary capacity. Nothing in Struble suggests that an employer cannot elect to contribute an amount described in a collective bargaining agreement and provide that, in the event of a dispute regarding the meaning of the agreement, an arbitrator's decision will govern.
 
 
 [2]
 The complaint makes conclusory reference to 29 U.S.C. S 1104(a) (failure to act for the exclusive benefit of the participants) and 29 U.S.C. S 1104(b) (failure to act with care, skill, prudence and diligence), as well as to 29 U.S.C. S 1104(c) (failure to act in accordance with the terms of the plan), but given the allegations of this particular complaint, a finding that the trustees collected all that was due the plan is inconsistent with recovery on these theories as well.