NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1071, 24-1096
_____

CONOCOPHILLIPS PETROZUATA BV; CONOCOPHILLIPS HAMACA BV;
CONOCOPHILLIPS GULF OF PARIA BV; CONOCOPHILLIPS CO

v.

BOLIVARIAN REPUBLIC OF VENEZUELA
*Appellant* in 24-1096

PETROLEOS DE VENEZUELA SA,
*Appellant* in 24-1071

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-22-mc-00464)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 17, 2024

Before:  RESTREPO, PHIPPS, and McKEE, *Circuit Judges*

(Opinion filed: December 5, 2024)
_____

OPINION*
_____

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Circuit Judge*.

In 2019, an arbitral panel of the International Centre for Settlement of Investment Disputes ("ICSID") determined that the Bolivarian Republic of Venezuela owed ConocoPhillips[1] over $8.5 billion plus interest for expropriating ConocoPhillips' interests in several oil projects. Since then, Venezuela has refused to pay. As a result, ConocoPhillips filed a motion for a writ of attachment in the District Court to attach U.S.- based assets owned by Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"). PDVSA intervened and moved to dismiss the action for lack of subject matter jurisdiction on the ground of sovereign immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). The District Court denied PDVSA's motion and granted the motion for a writ of attachment. We will affirm the District Court's order and remand for further proceedings consistent with this opinion.[2]

## I.

In joint ventures with PDVSA, ConocoPhillips engaged in crude oil projects in Venezuela. ConocoPhillips entered into Association Agreements with PDVSA in which PDVSA agreed to indemnify ConocoPhillips with respect to certain adverse

---

[1] Appellees are ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Company (collectively, "ConocoPhillips").

[2] Venezuela and PDVSA only appeal the District Court's denial of PDVSA's sovereign immunity. We have jurisdiction under 28 U.S.C. § 1291 pursuant to the collateral order doctrine. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 175 (3d Cir. 2023) [hereinafter *OIEG*], *cert. denied*, 144 S. Ct. 549 (2024); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 136 (3d Cir. 2019) [hereinafter *Crystallex II*].

2

governmental actions. Under these indemnity provisions, ConocoPhillips agreed that PDVSA's obligation to provide compensation would be limited to a price cap that restricted ConocoPhillips' recovery.

In 2007, Venezuela issued a decree nationalizing the oil projects without compensating ConocoPhillips ("2007 Nationalization Decree"). In response, ConocoPhillips initiated two arbitrations: one against Venezuela before the ICSID, and the other against PDVSA before the International Chamber of Commerce ("ICC").

**A.**

In the ICSID arbitration, ConocoPhillips brought claims against Venezuela under a bilateral investment treaty between Venezuela and the Netherlands ("Treaty").[3] ConocoPhillips alleged that Venezuela had unlawfully expropriated its investments and sought to recover their market value. The ICSID tribunal concluded that Venezuela had violated the Treaty by expropriating ConocoPhillips' investments.

During the damages phase of the proceedings, Venezuela argued that ConocoPhillips' recovery should be limited by the price caps in the Association Agreements. ConocoPhillips responded that "[t]he Association Agreements d[id] not affect Venezuela's obligations under international law. . . . Potential contractual causes of action are separate and distinct from Treaty claims. They cannot diminish the quantification of damages under international law."[4] ConocoPhillips further noted that

---

[3] ConocoPhillips also brought claims based on the Venezuelan Law on the Promotion and Protection of Investments. However, the ICSID concluded that it lacked jurisdiction over these claims.

[4] JA 248.

3

the Association Agreements "d[id] not purport to address Venezuela's obligations for its own wrongful conduct."[5] Venezuela's obligations were "outside the scope of the Agreements and w[ere] governed by other sources of State obligations, including international law."[6] Whereas PDVSA "agree[d] to take some degree of indemnity upon [itself]" in the Association Agreements, it "could not and did not purport to agree to impose obligations on the State."[7]

The ICSID tribunal rejected Venezuela's argument that damages should be limited by the caps in the Association Agreements because it was not addressing a claim for breach of those agreements. Rather, ConocoPhillips "invoke[d] international law and not the Association Agreements as the basis for the[] claim for damages."[8] The ICSID tribunal awarded ConocoPhillips damages based on the market value of its investments—an award of more than $8.5 billion plus interest.

**B.**

In the ICC arbitration, ConocoPhillips brought claims against PDVSA for willfully breaching the Association Agreements or, in the alternative, for indemnification of Venezuela's expropriation under the Association Agreements. Primarily, ConocoPhillips argued that PDVSA willfully breached the Association Agreements by "play[ing] an active and integral role in the destruction of [ConocoPhillips' oil] [p]rojects

---

[5] JA 249.
[6] JA 250.
[7] JA 250.
[8] JA 265.

4

and a decisive role in the Expropriation."[9] "[K]ey PDVSA officials by virtue of their dual positions in the Government and PDVSA" wore "'dual hats' [that] enabled PDVSA to be transformed into a mouthpiece of [Venezuela]."[10] Additionally, ConocoPhillips asserted that PDVSA was "inextricably linked with the State" and this "organic link" rendered it complicit in the expropriation of ConocoPhillips' investments.[11]

The ICC tribunal "[wa]s not persuaded by" ConocoPhillips' "dual hats" argument.[12] It also rejected ConocoPhillips' argument that PDVSA and Venezuela were "organically linked" as established by the *Air France* decision.[13] The ICC tribunal concluded that "[t]he *Air France* decision [wa]s not applicable"[14] because ConocoPhillips "had not shown that . . . the *Air France* principles ha[d] been accepted in Venezuelan law."[15] The ICC tribunal rejected ConocoPhillips' willful breach claims based on its "conclu[sion] that the 2007 Nationalization Decree was indeed external and not attributable to [PDVSA]."[16] But it determined that PDVSA was liable for Venezuela's expropriation pursuant to the indemnification provisions in the Arbitration Agreements and awarded ConocoPhillips approximately $1.9 billion directly against PDVSA.

## C.

---

[9] JA 710.
[10] JA 730.
[11] JA 752.
[12] JA 732.
[13] JA 752.
[14] JA 753.
[15] JA 754.
[16] JA 757.

After the conclusion of both arbitrations, ConocoPhillips filed an action to confirm the ICSID award in the United States District Court for the District of Columbia. ConocoPhillips obtained a judgment against Venezuela on the ICSID award and registered it in the District of Delaware. ConocoPhillips then filed a motion for writ of attachment to attach U.S.- based shares owned by PDVSA. PDVSA intervened and moved to dismiss the action for lack of subject matter jurisdiction on the ground of sovereign immunity under the FSIA. The District Court denied the motion to dismiss and granted the motion for a writ of attachment.

## II.

The District Court had jurisdiction over Venezuela to enforce the judgment pursuant to the FSIA's arbitration exception to sovereign immunity.[17] "Under federal common law first recognized by the Supreme Court in *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611 (1983), a judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is 'so extensively controlled by its owner that a relationship of principal and agent is created.'"[18] Thus, "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court had the power to issue a writ of attachment on that entity's non-immune assets to satisfy the judgment against the country."[19]

---

[17] *OIEG*, 73 F.4th at 165 & n.9; *Crystallex II*, 932 F.3d at 136–38.
[18] *Crystallex II*, 932 F.3d at 132 (quoting *Bancec*, 462 U.S. at 629).
[19] *Id.* at 139.

We have twice recognized in precedential opinions that PDVSA is Venezuela's alter ego under *Bancec*.[20] PDVSA and Venezuela do not directly challenge our precedent. Instead, they argue that ConocoPhillips should be judicially and collaterally estopped from relying on our precedent that PDVSA is Venezuela's alter ego.[21] We disagree that estoppel applies.

**A.**

We review a district court's decision whether to apply judicial estoppel for abuse of discretion.[22] Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."[23] Behind judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."[24]

---

[20] *OIEG*, 73 F.4th at 172; *Crystallex II*, 932 F.3d at 138, 140–49.
[21] Venezuela and PDVSA also argue that claim preclusion applies. However, this issue is forfeited because they did not raise it before the District Court and fail to present any "exceptional circumstances" that would warrant its consideration. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001)). Regardless, claim preclusion is inapplicable because this case and the ICC arbitration did not involve the same claims. *See Purter v. Heckler*, 771 F.2d 682, 689 n.5 (3d Cir. 1985) ("Claim preclusion refers to the preclusive effect of a judgment in barring relitigation of the same causes of action.").
[22] *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001).
[23] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).
[24] *Id.* (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782).

Essentially, judicial estoppel "is necessary to prevent a litigant from 'playing fast and loose with the courts.'"[25]

However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be."[26] It "should only be applied to avoid a miscarriage of justice"[27] and "is only appropriate when the inconsistent positions are 'tantamount to a knowing misrepresentation to or even fraud on the court.'"[28]

A court may apply judicial estoppel only if:

(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.[29]

Venezuela and PVDSA contend that ConocoPhillips is judicially estopped from arguing that PDVSA is the alter ego of Venezuela because it advocated in the ICSID arbitration that Venezuela and PDVSA were separate entities and here, it has taken the "diametrically opposed" position that they "are one and the same" under the *Bancec* doctrine.[30] The positions ConocoPhillips took are not irreconcilably inconsistent.

---

[25] *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)).
[26] *Id.*
[27] *Id.*
[28] *Id.* at 324 (quoting *Total Petroleum, Inc. v. Davis*, 822 F.2d 734–38 (8th Cir. 1987)).
[29] *Montrose*, 243 F.3d at 777–78.
[30] Opening Br. 24.

"[T]he *Bancec* doctrine . . . is a federal common-law outgrowth of th[e] specialized [FSIA] statute. It . . . exists specifically to enable federal courts . . . to disregard the corporate separateness of foreign sovereigns to avoid the unfair results from a rote application of the immunity provisions provided by the Sovereign Immunities Act."[31] "*Bancec* establishes a disjunctive test for when the separate identities of sovereign and instrumentality should be disregarded: when there is 'extensive[ ] control,' and when not disregarding separate identities would work a 'fraud or injustice.'"[32]

In the ICSID arbitration, ConocoPhillips argued that "[t]he Association Agreements d[id] not affect Venezuela's obligations under international law. . . . Potential contractual causes of action are separate and distinct from Treaty claims. They cannot diminish the quantification of damages under international law."[33] In doing so, it pointed out that "Venezuela was not a party to the Agreements,"[34] which "d[id] not purport to address Venezuela's obligations for its own wrongful conduct."[35] Additionally, it explained that while "PDVSA . . . w[as] authorized to agree to take some degree of indemnity upon [itself]. [It] could not and did not purport to agree to impose obligations on the State; that matter was outside the scope of the Agreements and was governed by other sources of State obligations, including international law."[36] In sum, ConocoPhillips

---

[31] *Crystallex II*, 932 F.3d at 139.
[32] *Id.* at 140 (alteration in original) (quoting *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 210 (2018)).
[33] JA 248.
[34] JA 248.
[35] JA 249.
[36] JA 250.

argued that the Association Agreements "did not purport to relieve [Venezuela] of its own legal responsibility or to waive any otherwise applicable international law."[37]

ConocoPhillips' argument before the ICSID that the Arbitration Agreements had no impact on Venezuela's obligations under international law does not conflict with any position it has taken here. ConocoPhillips' reliance on the legal separateness of Venezuela and PDVSA in making this argument also does not render its positions irreconcilably inconsistent. In both the ICSID tribunal and this action, ConocoPhillips has recognized the legally separate identities of PDVSA and Venezuela.[38] Here, however, it has relied on the *Bancec* doctrine to argue that we should "disregard the[ir] corporate separateness" in order to prevent PDVSA, an entity extensively controlled by Venezuela, from escaping our jurisdiction based on "the unfair result[] [of] a rote application of [the FSIA] immunity provisions."[39] These positions are not irreconcilable.

Regardless, even if ConocoPhillips' positions were irreconcilably inconsistent, the District Court did not abuse its discretion by holding that judicial estoppel did not apply because there is no evidence that ConocoPhillips changed its position in bad faith or that granting PDVSA immunity is an appropriate sanction. ConocoPhillips did not take these positions "with intent to play fast and loose with the court."[40] Rather, ConocoPhillips

---

[37] JA 250.

[38] The *Bancec* doctrine is only applicable to this action because PDVSA and Venezuela are legally separate. *Crystallex II*, 932 F.3d at 143 ("[I]f the instrumentality were directly liable for the award, there would be no need to invoke *Bancec* at all."). Indeed, by invoking the *Bancec* doctrine, ConocoPhillips contends that Venezuela "use[d] its instrumentality's separate status to perpetuate a fraud or injustice." *Id.* at 142.

[39] *Id.* at 139.

[40] *Ryan*, 81 F.3d at 361.

invokes our own binding precedent and asks us to affirm what we have twice already established—that PDVSA is the alter ego of Venezuela. It is difficult to see how a request that we impose our own precedent threatens the Court's integrity. There is nothing to support a finding that ConocoPhillips engaged in "culpable conduct [that] has assaulted the dignity or authority of the court."[41] ConocoPhillips did not change its position in bad faith.

Additionally, the remedy is not sufficiently tailored to address any affront to the Court's integrity. Judicial estoppel will not apply unless the sanction is "tailored to address the harm identified."[42] "We have stressed time and time again[] [that] judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other."[43] Here, the sanction would in effect allow Venezuela to avoid its legal obligations to ConocoPhillips and to avoid our well-established precedent that PDVSA is the alter ego of Venezuela. This sanction is not tailored to protect the Court's integrity.

The District Court did not abuse its discretion by holding that judicial estoppel does not apply.

**B.**

---

[41] *Montrose*, 243 F.3d at 781.

[42] *Id.* at 780–81 (quoting *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir.1999)).

[43] *Id.* at 781.

11

We review a district court's ruling on collateral estoppel de novo.[44] The party invoking estoppel bears the burden of proof.[45] "Collateral estoppel, also known as issue preclusion, prevents relitigation of a particular fact or legal issue that was litigated in an earlier action."[46] Collateral estoppel only applies if: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."[47]

Venezuela and PDVSA contend that ConocoPhillips is collaterally estopped from arguing that PDVSA is Venezuela's alter ego based on the decision in the ICC tribunal. Even assuming that collateral estoppel could sometimes apply to international arbitral awards—an issue not addressed in this opinion—it does not apply here. Whether PDVSA was the alter ego of Venezuela was not previously adjudicated in the ICC. "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules."[48]

In the ICC arbitration, ConocoPhillips sought to hold PDVSA liable for willfully breaching the Association Agreements. It argued that PDVSA was responsible for the 2007 Nationalization Decree due to its "organic link" with Venezuela[49] and because key

---

[44] *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 265 (3d Cir. 2008).

[45] *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).

[46] *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999).

[47] *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995).

[48] *Suppan*, 203 F.3d at 233 (quoting 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4425, at 253 (1981)).

[49] JA 731, 752.

PDVSA officials wore "dual hats" when they simultaneously worked in the PDVSA and the government.[50] Although these issues bear some similarity to the alter ego analysis in this action, the identical issue was not previously adjudicated. The ICC applied Venezuelan law to determine whether PDVSA willfully breached the Association Agreements based on the relationship between PDVSA and Venezuela at the time of the 2007 Nationalization Decree. In contrast, the *Bancec* alter ego inquiry "is a federal common-law outgrowth of th[e] specialized [FSIA] statute" that "exists specifically to enable federal courts . . . to disregard the corporate separateness of foreign sovereigns to avoid the unfair results from a rote application of the immunity provisions."[51] Thus, in this action we apply federal common law to determine whether PDVSA is the alter ego of Venezuela based on "all relevant facts up to the time of the service of the writ of attachment"[52] in 2023. The issue presented in the ICC arbitration was not identical to the alter ego analysis in this action because it involved different law and facts and never purported to address whether PDVSA was the alter ego of Venezuela.[53]

---

[50] JA 730.

[51] *Crystallex II*, 932 F.3d at 139.

[52] *OIEG*, 73 F.4th at 172.

[53] In the ICC arbitration, ConocoPhillips argued that PDVSA and Venezuela were organically linked based on the *Air France* factors, which PDVSA and Venezuela contend are indistinguishable from the factors considered in the *Bancec* alter ego analysis. The ICC, however, did not consider the *Air France* factors when deciding whether PDVSA was responsible for the expropriation because it concluded that "[t]he *Air France* decision [wa]s not applicable" given that ConocoPhillips "had not shown that . . . the *Air France* principles ha[d] been accepted in Venezuelan law." JA 753–54. Regardless of any similarities between *Air France* and *Bancec*, collateral estoppel does not apply because the *Air France* decision was immaterial to both the ICC's determination that the expropriation was not attributable to PDVSA and its consequent

The District Court did not err by holding that collateral estoppel does not apply.

## IV.

For the above reasons, we will affirm the District Court's order and remand for further proceedings consistent with this opinion.

---

rejection of ConocoPhillips' willful breach claims. *See Raytech*, 54 F.3d at 190 (requiring that "the identical issue was previously adjudicated . . . [and] necessary to the decision").