

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-2000

# Suppan v. Dadonna

Precedential or Non-Precedential:

Docket 98-2129

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Suppan v. Dadonna" (2000). *2000 Decisions.* Paper 20.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/20

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 4, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-2129

RICHARD SUPPAN; GLENN KERRIGAN;
GERALD DIETER; JAMES BOWSER
Appellants

v.

JOSEPH DADONNA; WAYNE STEPHENS;
GERALD MONAHAN, JR.; HAROLD BOYER;
RONALD MANESCU; SCOTT MITCHELL;
DENNIS TROCOLLA; MICHAEL COMBS;
THE CITY OF ALLENTOWN

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 95-cv-05181)
District Judge: Honorable Louis H. Pollak

Argued September 13, 1999

BEFORE: MANSMANN, McKEE and STAPLETON,
Circuit Judges

(Opinion Filed: February 4, 2000)

Richard J. Orloski
Stephen D. Rhoades (Argued)
Orloski, Hinga & Pandaleon
111 North Cedar Crest Boulevard
Allentown, PA 18104
 Attorneys for Appellants


Edward H. Feege
Jeffrey M. Zinskind (Argued)
Stevens & Lee
P.O. Box 20830
Lehigh Valley, PA 18002-0830
 Attorneys for Appellees
Daddona, Monahan, Boyer,
Mitchell, Combs and the City of
Allentown

James T. Huber
Gavin P. Holihan (Argued)
Huber and Waldron

535 Hamilton Mall, Suite 301
Allentown, PA 18101
 Attorneys for Appellees
Stephens, Manescu and Trocolla

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Plaintiffs/Appellants are police officers employed by the City of Allentown ("the City"). The defendants are the City and the high-ranking police officers who were involved in evaluating plaintiffs for promotion. Plaintiffs brought suit under 42 U.S.C. SS 1983 and 1985(3), alleging that the defendants violated their civil rights by, inter alia, not promoting them to sergeant in retaliation for their exercise of First Amendment rights, specifically their union activities and their support for a particular mayoral candidate. Plaintiffs each sought injunctive relief ordering their promotion to sergeant and damages. Defendants filed a motion for partial summary judgment on plaintiffs' claims for failure to promote, in which they accepted as true all of the factual averments in the plaintiffs' complaint, but asserted that they were entitled to judgment as a matter of law on the basis of an affidavit of William Heydt, mayor of Allentown, stating that during the relevant time period, no permanent promotions were made. The District Court

2

granted the defendants' motion and this appeal ultimately followed.1

I. The Facts

The following facts are taken as true for purposes of our review. Throughout 1993, the Queen City Lodge No. 10 of the Fraternal Order of Police (the FOP) and the City were attempting to negotiate a new collective bargaining agreement. All four plaintiffs were members of the FOP negotiating team and were significantly involved in union leadership, a fact of which defendants were aware. Throughout the 1993 contract negotiations, the relationship between defendant Stephens, then Chief of Police, and the FOP was very strained, culminating in defendant Stephens and ten of his Command Staff Officers, including defendants Monahan (Assistant Chief of Police), Manescu (Captain of Police), Trocolla (a police lieutenant) and Combs (another lieutenant), resigning from active FOP membership. In late September 1993, one month before the commencement of the promotional process at issue here, the FOP, having previously rejected five of the City's contract proposals during 1993, declared a total impasse

and elected to pursue arbitration.

In March 1992, plaintiff Suppan requested a transfer from steady night patrol. Chief Stephens, in the presence of defendants Monahan, and Boyer, Deputy Assistant Chief of Police, responded by chastising plaintiff Suppan: "Your problem is that you are a frustrated FOP lawyer, and as long as you want to assist a bunch of losers with your labor knowledge, you'll lose." (A. 97). In May 1993, defendant Monahan stated in front of all parties that "The FOP will

_____

1. Plaintiffs' complaint alleged a campaign of retaliatory harassment that resulted in "mental anxiety . . . stress, humiliation, loss of reputation and sleeplessness" as well as loss of promotion. (A. 107). Plaintiff James Bowser also alleged that he had been demoted in retaliation for his First Amendment activity. The defendants moved for a partial summary judgment limited to the failure to promote claims only. The District Court nevertheless entered summary judgments on all claims of the plaintiffs other than plaintiff Bowser's retaliatory demotion claim. That claim was ultimately settled and a final order entered.

3

not dictate how the department will be run." (A. 99). In September 1993, one month before the commencement of the promotional process at issue here, defendant Stephens said to plaintiff Suppan, "I'm getting sick and tired of you and your negotiating team trying to run this department. You don't run it, I do! You had a career here." (A. 97 (emphasis added)).

Plaintiffs were also outspoken supporters of then mayoral candidate William Heydt. Heydt's opponent, John Pressman, was a friend of defendants Stephens, Monahan and Manescu. In September 1993, defendant Stephens stated, "I have a sweet deal set up when John Pressman takes over." (A. 100-01). In late September 1993, the local paper ran a story stating that the FOP had endorsed Heydt. The paper also reported that plaintiff Dieter had hinted that a change of Chief of Police might be in the offing if Heydt were elected. Defendant Stephens waged a successful campaign to rescind the endorsement.

General Order 309 set forth the criteria and procedure for determining eligibility for promotion in the Allentown Police Department. All officers with a minimum of five years experience were eligible to participate in the evaluation process for promotion to sergeant. Officers submitting to the evaluation process were then ranked on a "promotion eligibility list." Promotion eligibility lists were effective for two years. For general positions, the Chief of Police was permitted to select any one of the top three candidates on

the list for promotion, but could pass over a candidate only twice before that officer became entitled to the next available position.

Plaintiffs, having the requisite five years experience, participated in the evaluation process in October 1993. In November 1993, they were notified of their rankings on the promotion eligibility lists for two potential positions: patrol sergeant and investigative sergeant. In accordance with General Order 309, these lists were effective from January 1994 to December 1995. Out of thirty-six names on each list, plaintiff Kerrigan ranked highest of all the plaintiffs at twenty-eight on both lists. Plaintiff Suppan was thirtieth on the patrol sergeant list and thirty-first on the investigative

4

sergeant list; plaintiff Dieter was thirty-third on both lists; and plaintiff Bowser was thirty-fourth on both lists.

Candidates for promotion were ranked according to a combined score that accounted for two weighted factors: 20% based on seniority and 80% based on an oral interview. Plaintiffs Kerrigan and Suppan were entitled to the maximum possible credit for seniority, which was 20 points. Plaintiffs Dieter and Bowser were entitled to sixteen and fourteen seniority points respectively.

The Promotional Interview/Evaluation form allows the lowest score to be a four. Defendant Stephens intentionally gave plaintiffs Suppan and Dieter less than four on numerous items in violation of the rules. Defendant Boyer also downgraded plaintiffs, giving scores of less than four. Defendants Monahan and Manescu did not violate the scoring procedure, but alleged insignificant incidents as a basis for their low scores. Plaintiffs had never been disciplined or counseled for these incidents. Defendants Monahan, Manescu and Mitchell admit that they rated plaintiff Kerrigan low because of his actions as President of the FOP when he alleged wrongdoing by a police captain. Defendant Manescu also has testified that he rated plaintiff Dieter low because he got a fellow officer in trouble by reporting that the officer struck a suspect on the head with a flashlight.

The night before the interviews, defendant Stephens telephoned defendant Combs and instructed him what grades to give the applicants under his command. Plaintiffs Suppan and Bowser were to receive threes and fours. Although he did not give threes and fours, defendant Combs gave consistently low scores, which he admits did not accurately reflect his opinion of plaintiffs' abilities, but rather reflected his instructions from defendant Stephens.

The candidates who were ranked first and second on both Sergeants lists had had severe disciplinary action taken against them within the two-year period preceding the evaluations, while plaintiffs Suppan, Bowser and Dieter have never been disciplined during their entire careers, and plaintiff Kerrigan has never been justifiably disciplined. Plaintiff Suppan has received many accolades from

5

superiors and above-average personnel evaluations during his eleven and one half years on the police force.

In December 1993, before the promotion lists became effective, Queen City Lodge No. 10 of the Fraternal Order of Police, the bargaining agent for members of the Allentown police force, filed an unfair labor practice charge with the Pennsylvania Labor Relations Board (PLRB) alleging that the sergeant's promotion lists were compiled in the midst of labor/management negotiations over a new collective bargaining agreement and that the rankings assigned to members of the union negotiating team reflected anti-union discrimination and retaliation.[2] In January 1994, while the PLRB proceedings were still pending, a new mayor, William Heydt, took office. No permanent promotions were made during the effective period of the promotion lists. Heydt explains that this was in part due to his belief that the Allentown Police Department had too many officers in management and not enough officers on patrol, and in part due to the PLRB proceedings, which made it inadvisable to promote from the "tainted" sergeants promotions lists. Heydt also believed that the promotion lists were the result of unfair evaluations based on nepotism and favoritism rather than merit.

II. The Merits Issues

The District Court held that even if plaintiffs' ranks on the promotion list were lowered in retaliation for their exercise of First Amendment rights, there could be no recovery on their failure to promote claim. In the Court's view, it is impossible for the plaintiffs to prove that they would have been promoted in the absence of the alleged retaliation because there is no way to prove, assuming the alleged retaliation had not occurred, (1) how many, if any,

_____

2. Although in October 1996 the PLRB found that the City had violated the Pennsylvania Labor Relations Act with regard to plaintiffs Kerrigan and Suppan (but not plaintiffs Dieter and Bowser), on appeal to the Commonwealth Court of Pennsylvania, the case was dismissed as moot because the promotion lists had expired and no promotions had been

made from the lists during their effective period. (Brief for defendants Daddona et al., Att. 2).

promotions would have been made from the list; and (2) whether plaintiffs would have ranked high enough to get promoted. Because no causal connection can be shown between the retaliatory ranking and the absence of promotion, the Court held that the plaintiffs have suffered no actionable deprivation of rights.

We conclude that summary judgment was inappropriately entered against the plaintiffs for two independent reasons. First, if the defendants deliberately lowered the plaintiffs' scores because of their exercise of their First Amendment rights, a constitutional violation occurred at that time for which relief may be appropriate even if the plaintiffs are not entitled to relief on their failure to promote claim. Second, there is evidence in the record that could support an award of compensation on plaintiffs' failure to promote claim.

III. The Threshold Issue – Collateral Estoppel

Defendants Daddona, Monahan, Boyer, Mitchell and the City assert that the plaintiffs are collaterally estopped from contesting both these issues. As to plaintiffs Kerrigan, Dieter and Bowser, this argument is plainly without merit. Due process requires that a party against whom collateral estoppel is asserted have "some fair relationship with the prior litigation relied upon." See Moldovan v. Great Atlantic & Pacific Tea Co., Inc., 790 F.2d 894, 899 (3d Cir. 1986). None of these three were parties to the prior action to which the defendants assign preclusive effect. See Suppan v. City of Allentown, No. CIV. A. 97–2102, 1997 WL 476359 (E.D. Pa. 1997) (hereinafter "Suppan I"). Furthermore, that case involved an entirely different set of promotion lists than the ones at issue here, and the plaintiff 's cause of action was based on alleged retaliatory adoption of a new seniority policy that adversely affected the plaintiff, which is not the same retaliatory conduct at issue here. See id. at *1–2. The mere fact that plaintiffs Kerrigan, Dieter and Bowser are now co-plaintiffs with a party to the prior action and are represented by the same counsel is not sufficient to make them privies to the prior action.

Moreover, even as to plaintiff Suppan, the defendants have not met their burden of establishing an identity of

issues between the cases. "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." 18 Wright et al., Federal Practice & Procedure S 4425, at 253 (1981). The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application. See Chisolm v. Defense Logistics Agency, 656 F.2d 42, 50 (3d Cir. 1981). The defendants have relied entirely on the District Court's opinion to establish which issues were litigated in the prior case. See Suppan I, 1997 WL 476359. That opinion does not establish that the Court considered the same issues presented here.

As noted, Suppan I involved subsequent promotion lists and different acts of alleged retaliation on the part of the defendants. Moreover, the Suppan I Court considered whether a change in the seniority policy that resulted in the plaintiff 's low ranking could by itself support a First Amendment retaliation claim. See id. That issue is not before us. In the instant case, what we must decide is whether a campaign of harassment, including threatening statements and culminating in a retaliatory low ranking that purports to be based on an assessment of the plaintiffs' qualifications, and that results in"mental anxiety, . . . stress, humiliation, loss of reputation, and sleeplessness," is an actionable First Amendment violation. (A. 107). The injuries that result from a low-ranking based on lack of seniority and a low-ranking based on qualifications are not "indistinguishable" in the context of First Amendment retaliation. For example, there is no indication in the Suppan I opinion that the plaintiff there had suffered humiliation and loss of reputation as a result of his low-ranking. Moreover, a low-ranking on the list "by itself " is distinguishable from a series of retaliatory incidents including threats and culminating in a low-ranking. Given that it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under S 1983, see Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982), we cannot say that these differences are legally insignificant.

Suppan I also determined that the plaintiff 's claim for retaliatory failure to promote was not ripe for decision

where, for reasons having nothing to do with the plaintiff 's protected conduct or the defendants' alleged retaliation (i.e., the plaintiff's poor performance on an objective exam), the plaintiff would not be eligible for promotion until eighteen promotions had been made. See Suppan I, 1997 WL 476359, at *5-8. Put differently, the issue in Suppan I was

whether the plaintiff 's failure to promote claim was viable in light of undisputed evidence of an intervening and superceding cause for the plaintiff 's not having been promoted. In contrast, the second issue presented in the instant case is whether the plaintiffs have viable failure to promote claims where there is evidence that the plaintiffs' protected conduct and the defendants' retaliation were substantial factors in each step of the decision-making process, and where therefore there was no independent and superceding cause. Therefore, because the instant case involves different legal issues that arise in a different factual context, none of the plaintiffs claims are collaterally estopped.

IV. The Violation

Because the plaintiffs were unable to prove that they would have been promoted in the absence of the retaliatory low ranking, this left them, in the District Court's view, "with only the argument that their low rankings .. . alone can support a S 1983 claim for retaliation if they can prove that the rankings resulted from defendants' alleged bias against them for engaging in protected conduct." Suppan v. Daddona, No. CIV. A. 95-5181, 1996 WL 592644, at *7 (E.D. Pa. Oct. 15, 1996). The District Court concluded that this claim was "too insubstantial to support the deprivation of rights element of a S 1983 claim."3 Id. We disagree.

_____

3. The District Court cited Ferraro v. City of Long Branch, 23 F.3d 803 (3d Cir. 1994), as supporting this conclusion. See Suppan, 1996 WL 592644, at * 8. It is inapposite. Ferraro was not a First Amendment retaliation case; it addressed whether an adverse change in working conditions deprived an employee of a property interest in employment in violation of the due process clause. See Ferraro, 23 F.3d at 804. Because the plaintiff conceded that he had not been deprived of his job or suffered any loss of pay or benefits, the court concluded he had not been

9

In Rutan v. Republican Party, 497 U.S. 62 (1990), the Supreme Court held "that promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." Id. at 75. In the course of its opinion, the Court rejected the argument that the First Amendment rights of the public employees had "not been infringed because they [had] no entitlement to promotion, transfer, or rehire." Id. at 72. Relying on Perry v. Sinderman, 408 U.S. 593 (1972)(teacher's lack of contractual or tenure rights to reemployment is immaterial to his First Amendment claim), the Court found the lack of legal entitlement "beside the point" in a First Amendment

case. Rutan, 497 U.S. at 72.

The Court then turned to the argument that the employee's First Amendment rights were not violated because the retaliatory decisions did "not in any way adversely affect the terms of employment, and therefore [did] not chill the exercise of protected belief and association." Id. at 73. The Court responded:

> This is not credible. Employees who find themselves in dead-end positions due to their political backgrounds are adversely affected. They will feel a significant obligation to support political positions held by their superiors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder.

Id.

The Supreme Court went on to observe that "the First Amendment . . . protects state employees not only from patronage dismissals but also from `even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for

_____

deprived of a property interest that could support aS 1983 claim based on the Fourteenth Amendment. See id. at 806-07. Similarly, the district courts' reliance on Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995), is equally misplaced. The Mark plaintiff's S 1983 action was based on alleged violations of substantive due process; it was not a retaliation case. See Mark, 51 F.3d at 1141.

10

exercising her free speech rights.' " Id. at 76 n. 8 (quoting Rutan v. Republican Party, 868 F.2d 943, 954 n. 4 (7th Cir. 1989).

Under the teachings of Rutan, we believe that a trier of fact could determine that a violation of the First Amendment occurred at the time of the rankings on the promotion list and that some relief is appropriate even if plaintiffs cannot prove a causal connection between the rankings and the failure to promote. The plaintiffs' complaint alleges a campaign of retaliatory harassment culminating in the retaliatory rankings and asserts that the defendants' conduct resulted in "mental anxiety, . . . stress, humiliation, loss of reputation, and sleeplessness" as well as loss of promotion. (A. at 107). Accepting as true the facts alleged in the complaint, as the District Court was required to do in light of defendants' stipulation, the District Court erred in concluding that there has been no actionable First

Amendment violation for which relief would be appropriate.

We find the observation of the Court in Bart v. Telford, 677 F.2d 622 (7th Cir. 1982) appropriate here. The plaintiff there had allegedly been the victim of a "campaign of petty harassments . . . motivated by her [political] views," a retaliation less serious in our view than the one alleged here. Id. at 625. In remanding for a trial on the merits, the Bart Court observed:

> The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable. Yet even in thefield of constitutional torts de minimis non curat lex. Section 1983 is a tort statute. A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise-- that if the Mayor of Springfield had frowned at Miss Bart for running for public office he would be liable for damages (unprovable, of course) under section 1983. See Raymon v. Alvord Indep. Sch. Dist., 639 F.2d 257 (5th Cir. 1981); cf. Walsh v. Louisiana High School Athletic Ass'n, 616 F.2d 152, 158 (5th Cir. 1980).

11

> However, more is alleged here -- an entire campaign of harassment which though trivial in detail may have been substantial in gross. It is a question of fact whether the campaign reached the threshold of actionability under section 1983.

Id.

Similarly, we conclude that a factfinder in this case could determine that the alleged retaliatory conduct was sufficient "to deter a person of ordinary firmness" from exercising his First Amendment rights and that some relief may be appropriate.

V. Causation and the Extent of Relief

If the trier of fact determines that a violation of the plaintiffs' First Amendment rights occurred at the time the promotion list was prepared, the plaintiffs are entitled to relief with respect to any injury or loss that resulted. This should include relief with respect to the loss of promotions if the requisite causal connection is shown. We believe the District Court's conclusion that it is impossible to establish the requisite causation overlooked relevant record evidence

and misallocated the burden of proof.

In a First Amendment retaliation case, the plaintiff has the initial burden of showing that his constitutionally protected conduct was a "substantial" or "motivating factor" in the relevant decision. Mount Healthy, 429 U.S. at 287 (citing Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 270-71 & n.21 (1977)). Once the plaintiff carries this burden, the burden shifts to the defendant to show "by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct." Id. In adopting this framework, the Mount Healthy Court explained the rationale for providing the employer with the opportunity to prove it would have reached the same decision in the absence of retaliation:

> [a] rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an

12

> employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. . . . The constitutional principle at stake is sufficiently vindicated if such employee is placed in no worse a position than if he had not engaged in the conduct.

Id. at 285 (emphasis added).

Mount Healthy does not define "substantial" or "motivating factor." It does, however, attribute the phrase "motivating factor" to Village of Arlington Heights, which, in the context of a Fourteenth Amendment challenge, discussed the challengers' burden of proving discriminatory purpose. Id. at 287 (quoting Village of Arlington Heights, 429 U.S. at 270-71 & n.21). The Arlington Heights plaintiffs relied entirely on evidence of disparate impact; they adduced no other evidence of discriminatory purpose. See Village of Arlington Heights, 429 U.S. at 268-70. The Court stressed that the plaintiffs were not required to show that a decision was "motivated solely by a single concern, or even that a particular purpose was the `dominant' or `primary' one." Id. at 265. The Court held, however, that the plaintiffs' evidence of discriminatory effect was insufficient "to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision." Id. at 270. In the course of reaching this conclusion, the Court further noted that:

> [p]roof that the decision was motivated in part by a

racially discriminatory purpose would not necessarily
have required invalidation of the challenged decision.
Such proof would, however, have shifted to the Village
the burden of establishing that the same decision
would have resulted even had the impermissible
purpose not been considered.

Id. at 270 n.21.

Under Mount Healthy's burden-shifting substantial-
factor/same-decision framework, the plaintiff is not
required to prove "but for" cause in order to warrant a
judgment in his favor. In this framework, the defendants, in
proving "same decision," must prove that the protected
conduct was not the but-for cause. If, in proving a

13

substantial or motivating factor, plaintiffs were required to
prove but-for causation, it would be impossible for
defendants to then prove that the same decision would
have been made in the absence of what the plaintiffs had
already shown to be the but-for cause of the decision. While
but-for causation is the ultimate question, it is the
defendants' burden to prove lack of but-for causation.

Thus, under Mount Healthy, if a plaintiff establishes that
the exercise of his First Amendment rights played some
substantial role in the relevant decision, he is entitled to
the extent practicable to be put in the same position that
he would have been in had he not engaged in that
protected conduct. As a result, if the defendant is able to
show by a preponderance of evidence that the same
decision would have been made had the protected conduct
not played a substantial role, no relief will be required. On
the other hand, if the protected conduct played any
substantial role and the defendant is unable to carry its
burden of showing the plaintiff has suffered no adverse
consequences as a result, the plaintiff is entitled to be put
in the same position he would have been in had the tainted
decision been made in his favor.

In the instant case, it is undisputed that the plaintiffs
engaged in protected conduct, that they were qualified to
participate in the promotion process, and that they were
not promoted. The plaintiffs have the burden of showing by
a preponderance of the evidence that their protected
activity played a substantial role in the two decisions that
resulted in their not being promoted: the ranking decision
and the decision not to promote anyone. If the plaintiffs
carry that burden, the burden will shift to the defendants
to prove by a preponderance of the evidence that the
plaintiffs would have gone unpromoted even if they had not

engaged in the protected activity. That burden could be carried by showing that:

(1) a fair evaluation by their superiors -- i.e., one in which retaliation played no role, would have ranked the plaintiffs sufficiently low on the list that they would not be contenders for any promotions that would be made; or

14

(2) a fair evaluation by those supervisors would h ave resulted in the same decision by the mayor not to promote anyone; or

(3) assuming promotions would have been made, a fa ir evaluation by those supervisors would have resulted in the Police Chief 's selecting other contenders.4

Since we are reviewing the District Court's decision on a defense motion for partial summary judgment, the crucial issues for us at this stage are whether the plaintiffs came forward with sufficient evidence so that a trier of fact could find that plaintiffs' protected conduct played a substantial role in the two decisions that resulted in their not being promoted. We hold that they have.

For purposes of this motion for summary judgment, defendants accepted as true all the factual averments in plaintiffs' complaint. It is clear that these facts could lead a reasonable factfinder to conclude not only that defendants were biased against the plaintiffs because of their protected activities, but that they acted on that bias in the evaluation process, lowering plaintiffs' scores. There are statements by the decisionmakers reflecting hostility to plaintiffs' union activities, particularly the statement by defendant Stephens made to plaintiff Suppan one month prior to the evaluations to the effect that because of his union activities, he had (past tense) a career with the department. Most importantly, several of the decisionmakers admit that the plaintiffs' protected conduct caused them to lower their scores. This evidence, if credited, is sufficient to prove that plaintiffs' protected

_____

4. Defendants would demonstrate this third alternative by showing that even if absent retaliation the plaintiffs would have ranked high enough to be twice considered for promotion, the Police Chief would have exercised his option to pass over a top-ranked candidate twice. We emphasize again, however, that this is the defendants' burden to show that the same decision would have been made even absent retaliation; the Police Chief 's hypothetical decision plays no part in the plaintiff 's

prima facie case. The plaintiffs' case is based on the actual decisions that led to their not being promoted; they are not required to adduce evidence that their protected conduct would have been a substantial or motivating factor in a hypothetical decision that in fact was never made.

conduct was a substantial factor in the ranking decision, thus shifting the burden to the defendants.

The affidavit of Mayor William Heydt is direct evidence from the decisionmaker regarding the reasons for the decision not to make any promotions. He swears that one of the factors in his decision was the claim brought on behalf of the plaintiffs alleging retaliation for their protected union activities. Plaintiffs' protected conduct was the basis and but-for cause of the PLRB proceedings. Indeed, the unfair labor practice charge and the PLRB proceedings are themselves protected activities. Given that the plaintiffs' protected conduct and the defendants' retaliatory acts caused both the PLRB proceedings and the "taint" in the lists, and that these in turn were substantial factors in the decision not to make promotions, the plaintiffs' burden with respect to causation has been met.

It is true, as the defendants stress, that there is no evidence of any retaliatory animus underlying the Mayor's decision not to make any promotions. Rather, the logical inference is that the Mayor was motivated by fear of liability.[5] Further, there is nothing to suggest that the Mayor's decision was in any way improper. Indeed, had the Mayor made promotions from the lists, he might have subjected the municipality to S 1983 liability by exhibiting deliberate indifference to plaintiffs' First Amendment rights. See San Filippo v. Bongiovanni, 30 F.3d 424, 445-46 (3d Cir. 1994). This does not, however, negate the retaliatory animus behind the initial ranking decision, and so it cannot expunge the taint from the process. Nor does it break the causal connection between plaintiffs' protected conduct and the defendants' failure to promote them.

The District Court erred in granting summary judgment on plaintiffs' failure to promote claims. Plaintiffs adduced evidence from which a reasonable factfinder could conclude that plaintiffs' protected conduct was a substantial factor in both the ranking decision and the decision not to promote anyone, and thus the burden shifted to the defendants to

_____

5. Since Mayor Heydt is the candidate whom plaintiffs supported, a factfinder might also conclude the Mayor was acting to protect plaintiffs' interests.

show that the plaintiffs are in the same position they would have been in if they had not engaged in protected activity. If it turns out to be true, as the District Court predicted, that it is impossible to prove by a preponderance of the evidence what would have happened absent the retaliation, it is the defendants who will bear that risk once the plaintiffs have established that retaliation was a substantial factor in the two relevant decisions.6

VI. Conclusion

The judgment of the District Court will be reversed, and this matter will be remanded to the District Court for further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

6. Stephens v. Kerrigan, 122 F.3d 171 (3d Cir. 1997), is distinguishable. In that suit, which was brought by the officers at the top of these same lists, this Court found that the plaintiffs had not met their burden of proving causation. See id. at 182. However, the protected conduct upon which those plaintiffs based their claims was not the basis for the unfair labor practice charge that was at issue in the PLRB proceedings. The Stephens plaintiffs had presented no direct evidence that their own protected conduct or the defendants' retaliation against them played any part in the decision not to make promotions. This Court concluded that no reasonable jury could have found that Heydt's proffered reasons for failure to promote anyone from the list, the unfair labor practice charge and the taint in the lists, were a pretextual cover for an impermissible decision based on the plaintiffs' protected activity. See id. at 181–82.