

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2004

# Muti v. Schmidt

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1206

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Muti v. Schmidt" (2004). *2004 Decisions.* Paper 798.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/798

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-1206

———

RICHARD S. MUTI

Appellant

v.


WILLIAM H. SCHMIDT, Individually and in his
Official Capacity as BERGEN COUNTY PROSECUTOR,
COUNTY OF BERGEN, WILLIAM P. SCHUBER,
Individually and in his Official Capacity as BERGEN COUNTY
EXECUTIVE, and JOHN AND JANE DOES 1-10,
Individually and in their Official Capacities


———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-03865)
District Judge: Honorable William H. Walls

———

Submitted Under Third Circuit LAR 34.1(a)
March 25, 2004

Before: ROTH, AMBRO and CHERTOFF, Circuit Judges

(Filed: April 21, 2004)

1

## OPINION

CHERTOFF, Circuit Judge.

Appellant Richard S. Muti filed suit against appellees William H. Schmidt, William P. Schuber, and Bergen County alleging violations of the First Amendment (by way of 42 U.S.C. § 1983), the New Jersey Conscientious Employee Protection Act, the Americans with Disabilities Act ("ADA"), and the New Jersey Law Against Discrimination ("LAD"). Defendants moved to dismiss Muti's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Muti consented to dismissal of his ADA claim. The District Court dismissed his First Amendment claim and declined to exercise supplemental jurisdiction over his remaining state law claims. For the following reasons, we will reverse the District Court's judgment and remand for proceedings consistent with this opinion.

### I.

A district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is subject to de novo review. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). "In evaluating the propriety of dismissal, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonably reading of the complaint, the plaintiff may be entitled to relief." Id. With this standard in mind, we

2

set forth the facts as alleged in Muti's complaint and culled from the documents referenced in the complaint.[1] We abbreviate our recitation of the facts since we write only for the parties.

## II.

Muti worked as an Assistant Prosecutor and office manager of the Bergen County Prosecutor's Office ("BCPO") at the time defendant Schmidt became the Bergen County Prosecutor in March of 1997. Schmidt asked Muti to continue as an Assistant Prosecutor and office manager, and he eventually promoted Muti to Deputy First Assistant Prosecutor. Schmidt made it clear, however, that Muti was not a part of his inner circle and policymaking team.

Beginning in 1999, Muti engaged in speech concerning five general matters related to the BCPO's operations. First, on June 24, 1999, Muti circulated a memo regarding an applicant for a paralegal position at the BCPO. The candidate suffered from clinical depression, and Muti advised Schmidt and members of the investigative staff that failing to hire her because of her condition would violate the ADA and the New Jersey LAD.

Second, on June 3, 1999, Muti sent a memo to Schmidt regarding the use of the BCPO's forfeiture funds to pay the salary of Lieutenant Donald McNair, an officer from the Paramus Police Department on special assignment with the BCPO to head a joint task

---

[1]The District Court considered documents that Muti explicitly relied on in his complaint when deciding defendants' motion to dismiss. Muti does not contend that the District Court erred by considering those documents. Muti Br. at 11 n.3.

force. The Chief of Detectives, Roger Kane, complained to Muti that McNair (who was Schmidt's close friend) was not doing any productive work and had not achieved any meaningful results during his involvement with the task force. Consequently Muti (to whom the New Jersey Attorney General and Division of Justice regulations gave the responsibility of approving all expenditures of forfeiture funds greater than $10,000) told Schmidt he would no longer approve expenditure of forfeiture funds to pay McNair's salary.

Third, Muti twice told Schmidt—in memos dated April 23, 1999 and September 23, 1999—that he felt the investigative staff was too large and should not increase in size. Muti believed that expenditures for additional personnel on the investigative staff were not a prudent use of public funds.

The final two subjects of Muti's speech involved Schmidt's efforts, beginning in early 1999, to purchase two buildings for the BCPO, one located on Golf Place in Hackensack ("Golf Place building") and one located at 100 Eisenhower Drive in Paramus ("Eisenhower Drive building"). Muti sent a memo to Schmidt on April 5, 1999 questioning the need for a new building. Schmidt ignored the memo and continued efforts toward acquiring one.

Schmidt decided to pursue a plan to purchase the Golf Place building in late April or early May of 1999. Approximately one month later, in June of 1999, Muti read in the newspaper that Schmidt had told the Freeholder Board that the project would cost

4

approximately $50,000, when an architect's report provided to Schmidt had estimated the cost at $150,000. Muti therefore sent Schmidt a memo on June 14, 1999 in which he called Schmidt's actions unethical, a violation of the New Jersey Rules of Professional Conduct, and a serious public policy matter. Muti also expressed his intention to disclose the misrepresentation unless Schmidt took prompt action to correct it.

Schmidt decided to pursue a plan to purchase the Eisenhower Drive building during approximately the same time period, in the spring of 1999. The initial plan involved the use of forfeiture funds to finance the purchase. Muti told Schmidt that the use of forfeiture funds would violate federal regulations and an agreement between the BCPO and federal government.

More than a year later, on August 9, 2000, Muti attended a Freeholder Board "work session" with Schmidt and Chief Kane. The purpose of the work session was to discuss the purchase of the Eisenhower Drive building. Schmidt refused, contrary to Muti's insistence, to disabuse the Freeholders of several mistaken beliefs regarding the purchase of the property, and the Freeholder Board authorized the County Executive to enter into a contract for the purchase of the building. Muti subsequently sent a letter, on August 14, 2000, to Schmidt, the Freeholders, the County Administrator, the County Counsel, the County Treasurer, and the BCPO First Assistant Prosecutor. The letter expressed his objection to the purchase of the Eisenhower Drive building and his belief that the continued expansion of the BCPO investigative and legal staffing was a waste of

public resources.

Schmidt fired Muti on August 14, 2000, the same day Muti sent the letter. Muti also alleges that Schmidt had begun to retaliate against him beginning in April of 1999 by reducing Muti's access to him, ignoring Muti's written communications, singling Muti out as the only Deputy First Assistant Prosecutor subordinate to the investigative staff, and relocating Muti's office without notice and to a denigrating location near the restrooms.

III.

This Court employs a three-step process in evaluating First Amendment retaliation claims. First, a plaintiff must establish that he engaged in protected activity by showing (a) his speech involved a matter of public concern; and (b) the value of his speech outweighed "the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). Second, a plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. Third, the public employer can rebut the claim by showing that it would have made the same decision even in the absence of the protected conduct. Id. The latter two considerations present questions for a finder of fact to determine. The first consideration presents a question of law. Id.

Defendants concede for purposes of their motion to dismiss that Muti's August 14

6

letter regarded matters of public concern. They argue, however, that the government's interest in providing effective and efficient public services outweighed the value of Muti's speech.

In weighing the government's interest as an employer, a court must consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" Rankin v. McPherson, 483 U.S. 378, 388 (1987). The manner, time, and place in which the speech occurred is important in this inquiry. See Connick v. Myers, 461 U.S. 138, 152-53 (1983). Thus the government's interest weighs more heavily when an employee personally confronts his supervisor in the workplace, for example, than when an employee engages in equivalent speech outside the workplace. See Connick, 461 U.S. at 152- 53 & n.13.

In addition, the employee's job responsibilities affects the degree the government's interest is weighed. See Rankin, 483 U.S. at 390. The more the employee's job requires confidentiality, policymaking, or public contact, the greater the state's interest weighs. Id. at 391; see also Sprague v. Fitzpatrick, 546 F.2d 560, 564 (3d Cir. 1976); Czurlanis v. Albanese, 721 F.2d 98, 106 (3d Cir. 1983); Zamboni v. Stamler, 847 F.2d 73, 79 (3d Cir. 1988); Pickering, 391 U.S. at 570 n.3 ("It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely

7

correct public statements might furnish a permissible ground for dismissal."). Yet although the policymaking status of the public employee is very significant in the Pickering balance, it is not conclusive. See Baldassare, 250 F.3d at 198 ("Above all, no single factor involved in this balancing is dispositive; they are all 'weights on the scales.'") (internal citations and quotations omitted).

In weighing the value of the employee's speech, a court must look to the content of the speech. In Connick, the Supreme Court cautioned that "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." 461 U.S. at 152.

IV.

The District Court dismissed Muti's First Amendment claim on the basis that Muti's August 14 letter did not constitute protected speech and Schmidt therefore fired Muti for permissible reasons. The Court based this decision on a determination that the government's interest as an employer outweighed the value of Muti's speech, largely because it found that Muti was a high ranking policymaker within the BCPO. Muti argues that the District Court erred in dismissing his First Amendment claim for three reasons.

First, Muti argues that, contrary to the District Court's determination, his August 14 letter constituted protected speech. We disagree. Although it is generally inappropriate to conduct the Pickering balancing analysis at the pleadings stage, cf. Holder v. City of Allentown, 987 F.2d 188, 196 (3d Cir. 1993); Sprague, 546 F.2d at 564 (3d Cir.

8

1976)—mostly because the analysis is very fact intensive, see Bd. Of County Comm'rs v. Umbehr, 518 U.S. 668, 677 (1996), and "often require[s] delicate line drawing," Swartzwelder v. McNeilly, 297 F.3d 228, 235 (3d Cir. 2002)—this case is the exception to the rule. Several factors, as alleged in Muti's complaint and evidenced in documents referenced therein, compel this conclusion: Muti was a high-ranking official in the BCPO (he had authority, for example, to approve the BCPO's expenditure of forfeiture funds); the August letter was an act of considerable disloyalty (he provided the Freeholder Board with a roadmap to oppose Schmidt's plans); and Muti wrote the letter on BCPO letterhead and sent it to several public officials outside the BCPO.[2] In addition, the letter did not allege that Schmidt had engaged in wrongful conduct; indeed, Muti stated that he had "no doubt that Prosecutor Schmidt is sincere in his belief that the BCPO needs the building." Rather, Muti simply expressed a difference in opinion regarding BCPO policy, which tends to mitigate the value of the speech.

In his second argument, Muti contends that he suffered from retaliation separate and apart from his termination on August 14. As explained above, the second step in the

_____

[2] Muti states in his complaint that his duties were mainly ministerial and he had no policymaking or decisionmaking authority. We will not accept conclusory allegations set forth in a complaint, however, when those allegations are belied by the complaint's remaining factual allegations. See Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 320 (2d ed. 1995). Nor will we accept conclusory allegations when contradicted by documents incorporated in the pleadings. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 464-65 (2d ed. 1995).

9

First Amendment retaliation analysis requires the plaintiff to show that his protected speech was a substantial or motivating factor in an alleged retaliatory action. This step actually contains two separable inquiries: "[D]id the defendants take an action adverse to the public employee and, if so, was the motivation for the action to retaliate against the employee for the protected activity." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 800 n.3 (3d Cir. 2000) (Greenberg, J., concurring in part and dissenting in part). Muti argues that he suffered from adverse employment actions prior to his termination—Schmidt's reducing Muti's access to him, ignoring Muti's written communications, singling Muti out as the only Deputy First Assistant Prosecutor subordinate to the investigative staff, and relocating Muti's office without notice and to a denigrating location near the restrooms—due to speech that occurred before the August 14 letter.

Not every public employee's grievance rises to the level of an adverse employment action. Decisions relating to "'to promotion, transfer, recall and hiring'" will typically constitute adverse employment actions, while simple "'criticism, false accusations, or verbal reprimands'" will not. Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quoting Suarez Corp. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). As a general matter, alleged retaliatory conduct must be "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000); see also Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002). Put

another way, the retaliatory actions must be "sufficiently severe to cause reasonably hardy individuals" to refrain from protected activity. Agosto-De-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1ˢᵗ Cir. 1989) (en banc).

Muti's pre-August 14 allegations of retaliatory conduct largely address Schmidt's decisions to reject or ignore Muti's advice about running the BCPO. But supervisors often weigh the value of their employees' recommendations. That is the essence of supervision. An employee does not have a right to insist that his supervisor heed his counsel. Supervisors must be entitled—and may well decide—to discount their subordinates' input. With this in mind, we conclude that the employment actions Muti alleges occurred before August 14, either taken alone or together, would not deter a person of ordinary firmness from exercising his First Amendment rights.[3] Muti has not alleged employment actions "result[ing] in a work situation 'unreasonably inferior' to the norm for the position." Id. Consequently, we find that Muti has failed to allege he suffered from an adverse employment action other than his August 14 termination.

What remains is Muti's third argument. As we explained above, Muti alleges that he engaged in five general instances of speech. The District Court correctly determined

---

[3]Muti's allegation that Schmidt moved his office to an undesirable location near the restroom does not change the calculus. A public employee may not "demand that the court suppress all manifestations of annoyance by a person" offended by the employee's protected speech. Bernheim v. Litt, 79 F.3d 318, 327 (2d Cir. 1996) (Jacobs, J., concurring) ("[Plaintiff's] assignment to a particular class, classroom or supply closet—even if she prefers another class, classroom or supply closet—does not appreciably impact on her employment as an elementary school teacher.").

11

that the last instance, the August 14 letter, was not protected speech. And we have determined that the only adverse employment action he suffered was his August 14 termination. Thus in order to make out a First Amendment retaliation claim, Muti must show that (1) he engaged in protected speech prior to the August 14 letter, and (2) any pre-August 14 protected speech was a substantial or motivating factor in his August 14 termination. The defendants can rebut this showing by establishing that they would have fired Muti even in the absence of any protected speech.

The District Court rejected Muti's argument based on his pre-August 14 speech in the following portion of its decision:

> Plaintiff also argues that his termination was in retaliation for his earlier protected activity related to the June 3 Memo, the June 14 Memo and the June 24 Memo. Even if these activities played a substantial part in the decision to terminate Plaintiff's employment, his act of disloyalty alone was enough to justify his termination.

App. Pa49 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-86 (1977)). Thus the District Court assumed that Muti met his burden of alleging that he engaged in protected activity and the protected activity was a motivating factor in his termination, but the Court found as a matter of law that defendants had sustained their burden of rebutting this showing as a matter of law on the pleadings.

Defendants urge us to affirm the District Court's decision on any of three grounds: (1) none of Muti's pre-August 14 speech was protected; (2) Muti cannot show that any of his pre-August 14 speech was a motivating factor in his August 14 termination; or (3)

12

even if Muti has satisfied these prerequisites, defendants have successfully rebutted them in accordance with the Supreme Court's decision in Mt. Healthy. Keeping in mind that we have before us a motion to dismiss for failure to state a claim, however, we must ultimately reverse the District Court's dismissal of Muti's First Amendment claim.

We agree, based on the pleadings, that two of the four instances of pre-August 14 speech were unprotected. Muti's April 23 and September 23 speech regarding staffing levels is inextricably intertwined with Muti's August 14 letter, which encompassed the same topic. Thus, for the same reasons we explained above, that speech is unprotected because its value is outweighed by the government's interest as an employer. And Muti's June 24 memo regarding the paralegal applicant is unprotected because it concerns internal employment practices having no public interest character and therefore does not address a matter of public concern. See Connick, 461 U.S. at 148-49.

But we cannot, on the record before us, conclude that Muti's June 14 memo alleging deception of the Freeholder Board or his June 3 memo regarding Lt. McNair was unprotected. "[S]peech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'" Baldassare, 250 F.3d at 195 (quoting Holder, 987 F.2d at 195). And the context in which Muti sent those memos—unlike his August 14 letter, Muti did not send the memos on BCPO letterhead and he sent it only to Schmidt and not to numerous officials outside the BCPO—tends to indicate that it was less likely to adversely affect the

13

government's interest as an employer. See Connick, 461 U.S. at 152-53 & n.13.

In addition, we cannot conclude as a matter of law that Muti is unable to show that any protected pre-August 14 speech was a motivating factor in his termination. To be sure, defendants note that Muti's earlier speech occurred at least fourteen months before his termination. Such a time period, absent any additional evidence of causation, might very well defeat Muti's claim at the summary judgment stage. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000). But Muti need not adduce evidence of causation at the pleadings stage, and he "need not plead facts."Alston v. Parker, __ F.3d __, 2004 WL 720230, at *3 & n.6 (3d Cir. Apr. 5, 2004); see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). He only has to provide a short and plain statement that gives "'the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.'" Swierkiwicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Finally, Mt. Healthy does not provide a basis to dismiss Muti's complaint. Defendants are correct that Mt. Healthy presented a factual scenario substantially similar to that of this case. There, the plaintiff, Fred Doyle, was a public school teacher who was involved in several instances of outrageous conduct and then subsequently engaged in protected speech. When his yearly review came up, the Board of Education refused to renew his contract. The District Court, which was sitting as the finder of fact, found that the Board of Education violated the First Amendment because the speech was a

14

"substantial" or "motivating" factor for Doyle's termination.[4]

Yet Mt. Healthy does not support dismissal of Muti's complaint at the pleading stage for failure to state a claim. To be sure, the Supreme Court reversed the District Court's finding of government liability on the basis that a public employee's First Amendment rights are not violated if he "is placed in no worse a position than if he had not engaged in the [protected] conduct." 429 U.S. at 285-86. But this reversal depended on an assessment of the facts. Thus, the Court explained, the "the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." Id. at 287. Mt. Healthy and its progeny make clear that this is a factual determination, and the defendant bears the burden of proving that it would have taken the same actions absent any protected activity on the part of the plaintiff. See Baldassare, 250 F.3d at 200-01; Suppan, 203 F.3d at 235-36. Put simply, it is inappropriate for a court to make that factual determination on the pleadings in the context of a motion to dismiss.

---

[4] The primary difference between Mt. Healthy and this case is the temporal order of the protected and unprotected activities. In Mt. Healthy, the unprotected activity (Doyle's outrageous conduct) occurred before he engaged in protected speech. Here, Muti's unprotected activity (his August 14 letter) occurred after he engaged in allegedly protected speech. But this difference is immaterial. In both cases defendants argue that they fired the plaintiff due to the unprotected activity and would have fired the plaintiff even in the absence of the protected activity.

15

V.

We agree, based on the pleadings, that plaintiff's August 14 letter and his memos of April 23, September 23, and June 24 were not protected speech. But we must reverse the District Court's dismissal of plaintiff's First Amendment claim because plaintiff must be allowed to conduct discovery to adduce evidence in support of his claim that his two remaining instances of pre-August 14 speech were protected and a substantial factor in his termination. Of course, summary judgment will be appropriate after plaintiff is given the opportunity to adduce such evidence if the District Court concludes that (1) plaintiff's June 3 and June 14 memos were not protected, (2) no reasonable jury could conclude that any of plaintiff's protected pre-August 14 speech was a motivating factor in his termination, or (3) no reasonable jury could conclude but that defendants would have terminated plaintiff even in the absence of any protected speech.

We will therefore reverse the District Court's judgment and remand for further proceedings consistent with this opinion.