NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4329
_____

LAURA WATSON
*Appellant*
v.
BOROUGH OF SUSQUEHANNA;
MIKE MATIS, Individually, Council President;
WILLIAM PERRY, JR., Individually, Council Vice-President
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-09-cv-294)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2013

Before:  GREENAWAY, JR., SLOVITER, and BARRY, Circuit Judges

(Filed: July 23, 2013)

_____

O P I N I O N
_____

SLOVITER, Circuit Judge.

Laura Watson appeals from the District Court's Order granting the Defendants' Motion for Judgment as a Matter of Law and vacating the jury verdict against Defendant William Perry, Jr. We will affirm.[1]

## I.

The following facts were established at trial. Watson was hired as a police officer by the Borough of Susquehanna ("the Borough") in September 2006. At all relevant times, Michael Matis was President and Perry, Jr. was Vice-President of the Borough of Susquehanna Depot Council ("the Council"). The Council makes decisions regarding disciplining or terminating Borough police officers. Such decisions require a majority vote of the Council members present.

In May 2008, Watson brought charges against William Perry, Sr., father of Perry, Jr., for filing false reports. Watson provided sworn testimony in connection with the charges in July 2008. Perry, Sr. eventually pled guilty to the charges against him. Shortly thereafter, Watson learned that her Section 8 housing assistance form had been seen by some members of the Council. Watson believed the disclosure of this form violated her rights, and she therefore confronted the Secretary-Treasurer of the Council, Ann Stewart, who was in charge of the housing forms. According to Stewart, Watson

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and this court has jurisdiction under 28 U.S.C. § 1291. We review de novo an order granting judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). *See Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (stating that a Rule 50(b) motion is granted "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.") (internal quotation marks omitted).

grew angry and threatened her. The Council called a special meeting to address the incident between Watson and Stewart. At this meeting, Watson again became angry and aggressive. Six members of the Council, including Perry, Jr. and Matis, voted unanimously to terminate Watson.

Watson brought suit against the Borough, Perry, Jr., and Matis, stating that she was retaliated against for exercising her First Amendment right to speech.[2] In May 2012, a jury rendered a verdict in favor of all Defendants, except Perry, Jr. The jury found that Perry, Jr. had voted to terminate Watson in retaliation for her testimony against his father. The jury further found that only Matis and Perry, Jr. were aware of Watson's testimony against Perry, Sr. but that Matis would have made the decision to terminate Watson regardless of whether she had testified against Perry, Sr. The District Court vacated the jury verdict and award of damages against Perry, Jr. and granted judgment as a matter of law, finding that the jury could not hold Perry, Jr. liable because it did not find a majority of the Council liable for retaliation.

II.

A. Liability of Perry, Jr.

Watson argues on appeal that the District Court improperly granted the Motion for Judgment as a Matter of Law and that the verdict against Perry, Jr. should be reinstated. To assert a First Amendment retaliation claim under Section 1983, Watson must show

---

[2] Watson based her suit on two instances of protected speech: her testimony against Perry, Sr. and her report of the misconduct in relation to her housing form. Only the first instance of protected speech is at issue in the Motion for Judgment as a Matter of Law and the District Court's Order granting this motion.

that she engaged in a protected activity and that the protected activity was a "substantial or motivating factor in the alleged retaliatory action." *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996). The Borough, however, can escape liability by showing that it "would have taken the adverse employment action regardless of whether [Watson] had engaged in protected conduct." *Id*.

The District Court held that under the retaliation analysis, Watson had not established the necessary causal link between her protected speech and the alleged retaliatory action, her termination.[3] The jury found that of the six Council members who voted to terminate Watson, only Perry, Jr. did so in retaliation for Watson's exercise of her free speech rights. Perry, Jr.'s vote, alone, was not the cause of Watson's termination, and his vote did not "play[] some substantial role in the relevant decision." *Suppan*, 203 F.3d at 236. Thus, the Court found that "the impartiality of the other Council members' votes nullified Defendant Perry, Jr.'s unlawfully-motivated vote. Acting alone, he could not have violated Plaintiff's First Amendment rights." App. at 26.

This court has held that a decision-making body cannot be liable when less than a majority of its members act with an impermissible purpose. *See LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125-26 (3d Cir. 2003). However, we have yet to consider

---

[3] Watson argues on appeal that Perry, Jr.'s vote to terminate her, as opposed to her termination, is the retaliatory action at issue. "'A tort to be actionable requires injury.'" *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Watson was not injured by Perry, Jr.'s vote in favor of termination. If the majority of the Council, who had no knowledge of her testimony against Perry, Sr., had not voted to terminate her, Watson would not have been affected by Perry, Jr.'s vote at all. The vote in favor of termination, by itself, cannot be the retaliatory action.

4

whether, in such a circumstance, a decision maker acting with an impermissible purpose is individually liable. The Second Circuit has provided guidance on this issue:

> [I]f a majority of defendants prove that their individual votes against the plaintiff would have been the same irrespective of the plaintiff's protected conduct, then the defendants as a group cannot be held liable, and no individual defendant, even one whose proof falls short, can be so held because causation is absent. . . . [E]ven if some defendants based their decision solely on impermissible grounds, a finding that a majority of defendants acted adversely to the plaintiff on legitimate grounds is sufficient for all to escape liability.

*Coogan v. Smyers*, 134 F.3d 479, 485 (2d Cir. 1998).

We agree with the reasoning of the Second Circuit and hold that Watson cannot establish the required causal link in order to hold an individual decision maker liable when less than a majority of the decision-making body acted for an impermissible retaliatory reason.[4] Because the jury found that Perry, Jr. was the only Council member who acted for an impermissible purpose, and the votes of a majority of Council members are required to terminate Watson, Perry, Jr.'s vote alone cannot establish the causal link between Watson's protected activity and her termination. The District Court did not err in granting the Motion for Judgment as a Matter of Law.

B. Other Issues

Watson raises several additional issues. They are meritless. First, Watson claims that the Defendants waived their right to request the Court vacate the jury verdict because they did not object to the verdict before the jury was dismissed. However, the

---

[4] Perry, Jr. may be individually liable if he threatened Watson that he would vote against her or harassed her because of her testimony. However, Watson did not put forth evidence of any retaliatory action taken by Perry, Jr. except for his vote in favor of termination.

5

Defendants moved for judgment as a matter of law several times during the trial and after the verdict was rendered, presenting the very arguments on which the District Court relied when it granted their motion.

Next, Watson argues that the Defendants waived their objections to the jury instructions, and that the District Court relied on the instructions being erroneous in order to vacate the jury's verdict. However, the District Court did not base its ruling on the jury instructions, but rather on a point of law related to the causation requirement.

Watson also alleges that the Court erred by not using the Third Circuit's Model Jury Instructions when instructing the jury about the relevance of the timing of events. The Third Circuit's Model Jury Instructions state: "The timing of events can be relevant, for example if [defendant's] action followed very shortly after [defendant] became aware of [plaintiff's] protected activity." § 7.4 (2012). The Court's instructions are substantially similar to the Model Jury Instructions and in accordance with the law. *See, e.g.*, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-80 (3d Cir. 2000).[5]

Next, Watson claims that Perry, Jr. can be individually liable under the "cat's paw" theory of liability. Under the cat's paw theory, as recognized by other circuits, a subordinate with an unlawful motive can be individually liable for the adverse employment action taken by his/her superior, if the superior was influenced by the subordinate. *See Smith v. Bray*, 681 F.3d 888, 897-98 (7th Cir. 2012) (gathering cases). This theory is inapplicable to this case. Perry, Jr. was not a subordinate, but one of the

---

[5] Watson's argument that she was prejudiced by the length of the jury verdict form is also without merit. The form did not require her to prove more than was required under the law to prevail on her claims.

decision makers. Furthermore, there is no evidence that he influenced other Council members to vote in favor of Watson's termination.

Additionally, Watson states the Court erred in instructing the jury on the "same action" defense, when the Defendants never pled this defense.[6] We need not decide this issue. Even if the District Court erred, the "same action" defense is only applicable to Defendant Matis. Therefore, it does not affect the outcome of the District Court's ruling on the Motion for Judgment as a Matter of Law.

Finally, Watson claims that the Court erred in admitting medical records from eleven years prior to the events in question.[7] Watson states that the admission of the records was error, as the records are irrelevant and are prejudicial because they refer to Watson's previous use of medication. We disagree. The records are relevant to the aspect of damages and are not prejudicial, as Watson's own counsel had questioned a witness regarding Watson's use of medication. Furthermore, although the Defendants did not list the records as exhibits before the first day of trial, Watson had access to the records and was given time to examine them prior to their admission. The Court did not abuse its discretion in admitting the medical records.

### III.

For the foregoing reasons, we will affirm the District Court's grant of the Motion for Judgment as a Matter of Law.

---

[6] Defendants can avoid liability by showing that they would have taken the same adverse action even absent the protected activity. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 144 (3d Cir. 2000).

[7] "We review the District Court's evidentiary rulings principally for abuse of discretion." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).